# In the United States Court of Federal Claims

No. 16-916C

(Filed Under Seal: August 14, 2017)

(Reissued for Publication: August 22, 2017)[1]

| | | |
|---|---|---|
| ************************************ * | | |
| | * | |
| ERIC J. YOUNG, | * | |
| | * | Breach of Settlement |
| Plaintiff, | * | Agreement; Meaning of |
| | * | "Voluntary Suspension"; |
| v. | * | Meaning of "Discipline"; |
| | * | Breach of Implied Duties |
| THE UNITED STATES, | * | of Good Faith and Fair |
| | * | Dealing. |
| Defendant. | * | |
| | * | |
| ************************************ * | | |

*James Y. Boland*, Venable LLP, Tysons Corner, Virginia, for Plaintiff.

*Igor Helman*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *James Blair*, Assistant General Counsel for Employment Law, Securities and Exchange Commission, Washington, D.C., for Defendant.

## ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

WHEELER, Judge.

Plaintiff Eric J. Young alleges that the Securities & Exchange Commission ("SEC") breached a Settlement Agreement with him by failing to rescind a Proposed Notice of

---

[1] The Court issued this decision under seal on August 14, 2017 and invited the parties to submit proposed redactions of any competitive-sensitive, proprietary, confidential, or other protected information on or before August 21, 2017. The Plaintiff proposed redactions that the Court rejected because they did not concern competition-sensitive, proprietary, confidential, or other protected information. See Dkt. No. 38. Thus, the Court reissues the opinion in its entirety for publication.

Suspension and treating a voluntary suspension as disciplinary for the purposes of an employee benefits program. Alternatively, Mr. Young claims that the SEC breached its implied covenant of good faith and fair dealing by frustrating his expectation to have a clean employment record following settlement. The Court finds that the SEC adhered to the terms of the Settlement Agreement and did not violate its implied covenant. Mr. Young has not presented any credible evidence demonstrating that the SEC failed to perform its side of the bargain. Therefore, the Court GRANTS the Government's cross-motion for summary judgment and DENIES Mr. Young's motion for partial summary judgment.

<u>Background</u>

Mr. Young has been an employee of the SEC since October 2012 and currently serves as Senior Counsel in the SEC Office of the Whistleblower. JA 96, 72.[2] During the relevant time period, Mr. Young served as an Attorney-Advisor in the SEC's Office of Equal Employment Opportunity ("OEEO"). Id. at 96. On February 27, 2014, Mr. Young allegedly sent an inappropriate email to his colleagues discussing his frustrations with members of another culture. Id. at 182. On March 5, 2014, Mr. Young allegedly had an "outburst" in another co-worker's office. Id. These two events prompted the Chief Human Capitol Officer, Ms. Lacey Dingman, to issue Mr. Young a "Notice of Proposed Fourteen Calendar Day Suspension" ("the Notice") on June 6, 2014. Id. at 180-84. The Notice informed Mr. Young that "[t]his is only a proposal" and described his rights to challenge the proposed suspension. Id. at 183-84.

Mr. Young disputed the factual allegations set forth in the Notice and objected to the proposed suspension. JS ¶ 10. On July 17, 2014, following negotiations, Mr. Young and the SEC entered into a Settlement Agreement. JA 185. Under the Settlement Agreement, Mr. Young agreed to take four actions: (1) "accept a ten (10) day suspension, which will be documented permanently in [Mr. Young's] Office Personnel Folder;" (2) perform a "nine (9) month interagency detail to the U.S. Attorney's Office;" (3) "[n]ot to challenge the voluntariness of the ten (10) day suspension or detail before the Merit Systems Protection Board . . . or in any other forum"; and (4) to waive any other claims Mr. Young may have against the SEC. Id. In exchange, the SEC agreed to take four actions: (1) "rescind [the Notice];" (2) "effect [Mr. Young's] ten (10) day suspension;" (3) "remove the 10 [] day suspension from [Mr. Young's] Official Personnel Folder" if he resigns, transfers or retires; and (4) "approve [Mr. Young's] nine (9) month interagency detail to the U.S. Attorney's Office. . . ." Id. at 185-86. Further, the Settlement Agreement specified "[t]his Agreement does not constitute an admission of fault . . ." by the SEC or Mr. Young. Id. at 186. Ms. Dingman participated in the settlement negotiations. JS ¶ 17.

---

[2] The parties submitted Joint Stipulations of Fact and a Joint Appendix in this case. See Dkt. No. 27. "JA__" refers to the consecutively-numbered pages of the parties' Joint Appendix. "JS ¶ __" refers to the paragraphs of the parties' Joint Stipulations of Fact.

The SEC removed the Notice from Mr. Young's personnel file and Mr. Young served his voluntary suspension and interagency detail.  JA 1-179.

On August 28, 2014, the SEC announced the creation of a Pay Transition Program under which SEC employees who met certain eligibility requirements could apply for increased compensation.  Id. at 189, 198.  Under the Program, employees were not eligible if they "had been formally disciplined within the last year."  Id. at 220.  The SEC defined "formally disciplined" as "the following personnel actions: (1) removal, (2) demotion, (3) suspension of any length and (4) reprimand."  Id. at 224.  Ms. Dingman oversaw the Pay Transition Program during the relevant time period and made final decisions regarding an employee's ability to participate in the Program.  Id. at 220-21.

On September 3, 2014, Ms. Dingman issued two Notifications of Personnel Action, Standard Form 50 ("SF-50") which documented Mr. Young's voluntary suspension.  Id. at 232-33.  The SF-50s listed "conduct unbecoming a federal employee" as the reason for the suspension.  Id.  Mr. Young notified the SEC that the SF-50s were incorrectly identified because there was no finding that Mr. Young had behaved inappropriately under the Settlement Agreement.  Id. at 230-31.  As a result, the SEC changed the SF-50s to list "settlement agreement" as the reason for the suspension.  Id. at 227-28, 83.

Mr. Young submitted his application to the Pay Transition Program in October 2014.  JS ¶ 38.  On June 5, 2015, the SEC, acting through Ms. Dingman, denied Mr. Young's application because "he had not met the eligibility requirements for the program due to a discipline or performance issue."  JA 234.  Mr. Young filed a formal grievance under the SEC's administrative grievance procedures challenging the determination that he was ineligible to participate in the Pay Transition Program.  Id. at 244-49.   The SEC ultimately denied Mr. Young's challenge stating that Mr. Young was ineligible due to prior discipline, "specifically, a ten (10) day suspension, which [he] served during August and September 2014."  Id. at 259.

Mr. Young filed a complaint in this Court on August 1, 2016 asserting that the SEC breached the express terms of the Settlement Agreement (Count I) and the SEC breached its implied covenant of good faith and fair dealing (Count II).  Dkt. No. 1.  On April 21, 2017, Mr. Young filed a motion for partial summary judgment and, on May 26, 2017, the Government filed a cross-motion for summary judgment.  Dkt Nos. 29, 32.  The parties have completed briefing the cross-motions and the Court heard oral argument on July 17, 2017.

<u>Discussion</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  RCFC 56(c). A fact is "material" if it might significantly alter the outcome of the case under the

governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of showing that there exists no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment will not be granted if the "evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  The Court's function is not to weigh the evidence and determine the merits of the case presented, but to determine whether there is a genuine issue of material fact for trial.  Id. at 249; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  However, when the non-moving party fails to make a sufficient showing of the existence of an essential element for which he bears the burden of proof, summary judgment is appropriate.  Celotex Corp., 477 U.S. at 322-23.

A.  The SEC Complied with the Express Terms of the Settlement Agreement.

Mr. Young claims the SEC breached the Settlement agreement by twice demonstrating that it had not rescinded the Notice.  First, Mr. Young argues the SEC's characterization of the voluntary suspension as disciplinary demonstrates that the SEC never rescinded the Notice.  Pl.'s Mot. at 11; Pl.'s Resp. at 10-11.  Second, the SEC breached the Settlement Agreement when it released SF-50s that incorrectly listed the reason for suspension as "conduct unbecoming a federal employee."  Pl.'s Mot. at 13-14; Pl.'s Resp. at 16.  Resolving the first claim is a matter of contract interpretation, while resolving the second claim requires the Court to determine whether the issuance of the SF-50s constituted a breach of any express term of the Settlement Agreement.  The Court holds that the SEC did not breach the express terms of the Settlement Agreement because the voluntary suspension was disciplinary in nature and the issuance of the incorrect SF-50s is not evidence of the SEC failure to rescind the Notice.

1.  The SEC Properly Interpreted the Voluntary Suspension as Disciplinary.

"Contract interpretation begins with the plain language of the agreement."  Gould, Inc. v. United States, 953 F.2d 1271, 1274 (Fed. Cir. 1991).  The Court must give effect to the plain meaning of unambiguous terms used in a contract.  McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996); see also HRE, Inc. v. United States, 142 F.3d 1274, 1276 (Fed. Cir. 1998).  Further, terms in a contract should be interpreted consistently with the document as a whole and should not "drain [a] clause of any significant meaning . . . ."  United States v. Seckinger, 397 U.S. 203, 214 (1970).  Absent ambiguities, the Court may not refer to extrinsic evidence and must rely solely on the language of the document.  HRE, 142 F.3d at 1276.

The Court is tasked with interpreting the term "suspension" as used in the Settlement Agreement.  As a preliminary matter, "suspension" is statutorily defined as "the placing of an employee, *for disciplinary reasons*, in a temporary status without duties and pay."  5 U.S.C. § 7501(2) (emphasis added).  Moreover, a suspension is normally disciplinary.

4

<u>Thomas v. General Services Admin.</u>, 756 F.2d 86, 88 (Fed. Cir. 1985) (The "normal meaning of 'discipline' is "punishment intended as a sanction for improper conduct."). Since both the plain meaning and statutory definition of "suspension" include a disciplinary action, Mr. Young bears the burden of showing that the Settlement Agreement as a whole intended "suspension" to be non-disciplinary. <u>Harris v. Dep't of Veterans Affairs</u>, 142 F.3d 1463, 1467 (Fed. Cir. 1997).

Mr. Young points to three clauses in the Settlement Agreement demonstrating that the voluntary suspension was intended to be non-disciplinary. First, clause 3(a) required the Notice to be rescinded, thus voiding a prerequisite for the imposition of discipline. Pl.s' Mot. at 11; JA 185, 3(a). Second, Mr. Young agreed not to challenge the voluntariness of the suspension in any forum in clause 2(c). Pl.'s Resp. at 17, JA 185, 2(c) ("Non-Challenge Clause"). Third, clause 9 states that Mr. Young did not admit to any fault. Pl.'s Resp. at 18, JA 186 ("No-Fault Clause"). The Court will consider each of these clauses in turn.

### a. A Voluntary Suspension under a Settlement Agreement can be Disciplinary without a Proposed Notice of Suspension.

The procedures for suspending federal employees is prescribed by statute. 5 U.S.C. § 7503. "An employee against whom a suspension for 14 days or less is proposed is entitled to [] an advance written notice stating the specific reasons for the proposed action . . . ." <u>Id.</u> at § 7503(b)(1). In this case, the Notice acted as Mr. Young's advanced written notice of a proposed suspension in compliance with Section 7503(b)(1). Mr. Young argues that when the Notice was rescinded, the legal prerequisite to impose a suspension was made void. "Since the SEC agreed to rescind the charges and advance written notice required by law . . ., rescission of [the Notice] precluded the SEC from characterizing the voluntary, 10-day suspension as disciplinary." Pl.'s Resp. at 10; <u>see also id.</u> at 20 ("[T]he 10-day "suspension" that Mr. Young agreed to accept was not a disciplinary suspension and could never be characterized as such, since the existence of a Notice of Proposed Suspension is a legal prerequisite for any 'suspension' to constitute disciplinary suspension."). According to Mr. Young, his intentional bargaining for the Notice to be rescinded demonstrates his understanding that there would be no legal basis upon which to issue a disciplinary suspension.

The Court rejects Mr. Young's argument that the voluntary suspension cannot, by law, be considered disciplinary because it was not accompanied by its own Notice of Proposed Suspension. The purpose of Section 7503 is to give employees notice of proposed discipline. Section 7503(b) does not prescribe a specific form that notice must take, but instead insures that employees can adequately respond to charges against them. <u>Brook v. Corrado</u>, 999 F.2d 523, 526 (Fed. Cir. 1993); <u>Hayes v. Department of Navy</u>, 727 F.2d 1535, 1538 (Fed. Cir. 1984). Here, Mr. Young had ample notice of the SEC's intent to discipline him and engaged in negotiations as a result of that notice.

Mr. Young also argues the legal meaning of the word "rescind" entails that the SEC cannot consider the underlying action prompting the Notice in addition to the Notice itself. Pl.'s Resp. at 10. If this is true, then "[t]he obligation to 'rescind' . . . included rescinding each of the allegations against Mr. Young, thereby eliminating any disciplinary relationship to the remainder of the Settlement Agreement's terms." Id. According to Mr. Young, there is no factual foundation to consider the voluntary suspension disciplinary. In fact, Mr. Young takes issue with the SEC even preserving a copy of the Notice. Pl.'s Mot. at 13.

Mr. Young overextends the legal force of rescission. After the Settlement Agreement, the SEC cancelled the notice and notified the Office of Human Resources that the Notice was to be rescinded. Gov.'s Mot., Supp. App. at 74. "Rescind" means "to abrogate or cancel" or to "make void". Black's Law Dictionary (10th ed. 2014). As applied to this case, "rescind" means cancel the effect of the Notice. This entails that the SEC could not, unilaterally, discipline Mr. Young for the underlying allegations on the basis of the Notice. However the underlying allegations were not "cancelled" or "ma[de] void". Pursuant to the Settlement Agreement, the SEC was only required to rescind the Notice, not treat all the behavior that prompted the Notice as if it never happened. Engel v. U.S. Postal Service, 114 M.S.P.R. 541, 544-45 (2010) (An agency successfully rescinds a Notice of Proposed Suspension when it deletes the notice from the employee's personnel file.).

Mr. Young now asks the Court to force the SEC to "rescind and expunge" his record to completely "remove from [his] record" any history of the allegations that precipitated the Notice. Rescind and Expunge, Black's Law Dictionary (10th ed. 2014). If Mr. Young sought expungement, then he should have bargained for it. In Perrine v. Dep't of Veterans Affairs, the plaintiff entered a settlement agreement in which the Department of Veterans Affairs agreed to "expunge [his] record" of a removal action. 316 F. App'x 995 (Fed. Cir. 2009). The Federal Circuit held that expungement requires the removal "of any reference to his removal action" in his record. Id. at 998. Whereas, "rescind" means removing the document in question from an employee's record. Id. at 997 (citing Conant v. Office of Personnel Management, 255 F.3d 1371, 1376 (Fed. Cir. 2001)). Under this definition of "rescind", the SEC fully complied with clause 3(a).

For these reasons, the fact that the Notice was rescinded does not render the voluntary suspension non-disciplinary as a matter of law. The Settlement Agreement itself acts as notice required by 5 U.S.C. § 7503(b)(1) and the rescission of the Notice does not amount to erasing all the facts preceding the Notice. Thus, clause 3(a) is only relevant to the interpretation of the Settlement Agreement insofar as it is evidence that the parties intended the voluntary suspension to be for non-disciplinary reasons. The Court finds clause 3(a) relatively unhelpful to Mr. Young. The rescission of the Notice for a fourteen day suspension does little to show that a separate ten day voluntary suspension was non-disciplinary. Instead, Mr. Young successfully bargained for a reduction of a proposed suspension by four days. The Court can see no other reason why Mr. Young would agree

to any suspension at all if it were truly the case that it served no disciplinary function. Moreover, the Court cannot understand why the SEC would bargain for a suspension if it did not intend to discipline Mr. Young. Interpreting "suspension" as non-disciplinary "drain[s the] clause of any significant meaning" and makes the parties' intentions incomprehensible. Seckinger, 397 U.S. at 214. In the end, Mr. Young benefitted from a reduced suspension and the SEC benefitted by responding to the perceived inappropriate behavior of one of its employees. This interpretation is supported by the statutory definition of suspension as "for disciplinary reasons" and the common practice of reducing suspensions in settlement agreements. See 5 U.S.C. § 7501(2); see also Cortez v. Veterans Admin., 27 M.S.P.R. 648, 649 (1985); Auker v. Dept. of Defense, 92 M.S.P.R. 279, 286 (2002).

> **b.** The No-Fault and Non-Challenge Clauses do not demonstrate that the Voluntary Suspension was Non-Disciplinary.

Next, Mr. Young argues the No-Fault clause (clause 9) of the Settlement Agreement shows that the suspension was non-disciplinary because "Mr. Young did not concede any fault or violation of any rules." Pl.'s Resp. at 18. Implicit in this argument is the incorrect assumption that an employee must admit to fault in order to be disciplined. Mr. Young cites no authority for this claim. Pl.'s Mot. at 10-16; Pl.'s Resp. at 17-18. Admission of fault is not a prerequisite for discipline. In fact, accepting punishment without admitting guilt is a common procedure in employee disciplinary proceedings. E.g., Slattery v. Dep't of Justice, 590 F.3d 1345, 1346 (Fed. Cir. 2010); Jaramillo v. Dep't of the Air Force, 298 F. App'x 960, 962 (Fed. Cir. 2008). The No-Fault clause is a boiler plate, standard clause protecting both the SEC and Mr. Young from the other claiming the Settlement Agreement constituted some admission of fault. The inclusion of a boiler plate clause does not overcome the presumption that "suspension" was intended to have its plain, and statutory, meaning. Travelers Casualty & Surety Co. v. United States, 75 Fed. Cl. 696, 715 (2007) ("A boiler plate . . . clause cannot be interpreted so broadly as to render other portions of the contract insignificant.").

Finally, Mr. Young believes the Non-Challenge clause (clause 2(c)) shows that the voluntariness of the suspension rendered it non-disciplinary because discipline is something "imposed" upon someone. Pl.'s Resp. at 17. Mr. Young exaggerates the effect of the Non-Challenge clause. It is simply not true that a suspension is only disciplinary if it is contested. An employee need not protest vociferously in order for his suspension to be "for disciplinary reasons." A suspension can "fall within the normal meaning of 'discipline'" merely if it stems from an employee's "conduct". Thomas v. General Services Admin., 756 F.2d 86, 88 (Fed. Cir. 1985). Mr. Young may have agreed not to challenge the suspension, but he certainly did not volunteer for an unprompted and unpaid suspension and would not have been suspended had the SEC not sought to impose one upon him. Mr. Young was suspended because of conduct prompting the SEC to take disciplinary steps.

Moreover, the Non-Challenge clause has a much more straight-forward explanation. The clause specifically precludes Mr. Young from challenging the voluntariness of the suspension at the Merit Systems Protection Board – a venue in which challenges to suspension regularly occur.  JA 185.  The Merit Systems Protection Board does not have jurisdiction to hear challenges to voluntary suspensions.  <u>Collier v. U.S. Postal Service</u>, 51 M.S.P.R. 513, 516 (1991).  The Settlement Agreement specifically states that Mr. Young may not "*challenge the voluntariness*" of the suspension.  JA 185 (emphasis added).  The language in the clause clearly indicates that the purpose of the Non-Challenge clause was to prevent Mr. Young from challenging the suspension before the Board; nothing more and nothing less.

Mr. Young has failed to demonstrate that "suspension", as used in the Settlement Agreement, should have any meaning other than its plain meaning.  Therefore, the SEC properly treated the voluntary suspension as disciplinary and did not breach the Settlement Agreement by denying Mr. Young's application for the Pay Transition Program.

### 2.  <u>The SEC Rescinded the Notice pursuant to the Settlement Agreement.</u>

Mr. Young also argues that the SEC breached the Settlement Agreement when it issued two incorrect SF-50s.  Pl.'s Mot. at 13.  "Ms. Dingman issued two SF-50s stating that Mr. Young has been suspended due to 'conduct unbecoming a deferral employee,' quoting verbatim from the [Notice] that she was obligated to rescind (but obviously did not)."  <u>Id.</u> at 13-14.  The logic behind this argument seems to be as follows: the only way the incorrect SF-50s could have been issued was if Ms. Dingman wrote them while referring to the Notice, and the Notice must have still been in Mr. Young's personnel file if Ms. Dingman was referring to it.  Both of these assumptions are not supported by any evidence.  Ms. Dingman was involved in issuing the Notice, Mr. Young's internal appeal of the Notice, and the drafting and execution of the Settlement Agreement.  JA 180, 185. Her familiarity with Mr. Young's case makes it very likely that she would not have needed to refer to the Notice in drafting the SF-50s.  Further, even if a copy of the Notice was preserved, there is no evidence suggesting it was in Mr. Young's record.  Mr. Young simply believes that Ms. Dingman "continued to act" on the basis of the Notice, but there is no evidence suggesting this is true.  Instead, the incorrect SF-50s were clerical mistakes, quickly corrected once Mr. Young brought the mistake to the SEC's attention.  This mistake is not "irrefutable evidence" that Ms. Dingman never rescinded the Notice.  Pl.'s Resp. at 22.  The SF-50s are correct in Mr. Young's file, and were correct when he applied to the Pay Transition Program.  JA 232, 227.

In general, the only affirmative action Mr. Young identifies as evidence of the SEC's breach of its obligation to rescind the Notice is the incorrect SF-50s.  Nothing in Mr. Young's personnel file suggests that the SEC did not rescind the Notice.  All internal communications regarding Mr. Young's case at the SEC support that the Notice was indeed cancelled and never acted upon.  <u>Id.</u> at 227, Gov.'s Mot., Supp. App. at 74.  The SEC's

denial of Mr. Young's application to the Pay Transition Program does not refer to the Notice at all, but only to the voluntary suspension. JA 259. It is unclear what else the SEC could do to prove to Mr. Young that it has not acted on the rescinded Notice. As it pertains to the cross-motions for summary judgment, Mr. Young's inkling that the SEC never really rescinded the Notice is not sufficient to prevent summary judgment for the Government. See Gunning v. Cooley, 281 U.S. 90, 94 (1930) ("A mere scintilla of evidence is not enough to require the submission of an issue to the [trier of fact.]"); Fireman's Insurance Co. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982) (A party opposing summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions.").

The SEC rescinded the Notice pursuant the express terms of the Settlement Agreement. Therefore, the Court GRANTS the Government's cross-motion for summary judgment on Count I and DENIES Mr. Young's motion for partial summary judgment on Count I.

### B. The SEC did not Breach its Implied Covenant of Good Faith and Fair Dealing.

"Every contract implicitly contains a covenant of good faith and fair dealing, keyed to the obligations and opportunities established in the contract." Lakeshore Engineering Services, Inc. v. United States, 748 F.3d 1341, 1349 (Fed. Cir. 2014). A party breaches the implied covenant when it "reappropriate[s] the benefits the other party expected from the transaction, thereby abrogating the [breaching party's] obligations under the contract." Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 829 (Fed. Cir. 2010). However, parties "cannot rely on the implied covenant of good faith and fair dealing to change the text of their contractual obligations." Century Exploration New Orleans, LLC v. United States, 745 F.3d 1168, 1179 (Fed. Cir. 2014).

Mr. Young asserts that treating his voluntary suspension as disciplinary and the issuance of the incorrect SF-50s were violations of the SEC's implied covenant in addition to being breaches of clause 3(a). Pl.'s Mot. at 16. First, the Court has already addressed Mr. Young's claim that the SEC improperly interpreted the term "suspension" in the Settlement Agreement. Since the SEC properly treated the suspension as disciplinary under the terms of the agreement, it did not breach its implied covenant by doing so. Century Exploration New Orleans, 745 F.3d at 1179 (There can be no breach of an implied covenant when a contract expressly allows the challenged action). Second, the Court has already rejected Mr. Young's claim that the incorrect SF-50s demonstrate the SEC never rescinded the Notice. As it pertains to Count II, Mr. Young argues the incorrect SF-50s show "a no-fault settlement evidently meant little to Ms. Dingman" [and] "that Ms. Dingman continued to treat Mr. Young as having been subject to formal discipline." Pl.'s Mot. at 17. However, as discussed above, Mr. Young presents no evidence beyond mere conjecture to support this claim. The incorrect SF-50s only definitively show that the SEC is capable of clerical error and willing to correct errors when brought to its attention.

In addition to these already discussed claims, Mr. Young argues that the SEC breached its implied covenant by denying him benefits that he "reasonably expected." Id. at 18. "Mr. Young expected that he would not have record showing discipline and therefore reasonably anticipated receiving any financial and professional benefits associated with a clean employment record." Pl.'s Resp. at 23. He goes on to mention that Ms. Dingman, and her supervisor Jeffrey Heslop, "concealed the existence of [the Pay Transition Program] when they negotiated the terms of the Settlement Agreement." Id., n. 7. Mr. Young is arguing, in effect, that the SEC prevented him from participating in the Pay Transition Program in bad faith by intentionally "conceal[ing]" it from him. In reality, the only reasonable expectation Mr. Young could have is for the SEC to adhere to the terms of the settlement – which it has done. Mr. Young does not have the reasonable expectation of benefits not present in the Settlement Agreement and having a "clean employment record" was not a term of the Settlement Agreement. Bell/Heery v. United States, 739 F.3d 1324, 1335 (Fed. Cir. 2014) (The "implied duties of good faith and fair dealing cannot form the basis for wholly new contract terms."). Further, Mr. Young offers no evidence that the SEC actively "concealed" the Pay Transition Program from him during negotiations. The Pay Transition Program was not yet finalized and the SEC had no duty to disclose its existence during discussions. Mr. Young does not have a reasonable expectation to benefit from a non-existent program.

In summary, Mr. Young's repeated insistence that the SEC never *truly* rescinded the Notice and never *really* moved past the alleged misconduct is unsupported by the necessary facts to survive the Government's cross-motion for summary judgment on Count II. Celotex Corp., 477 U.S. at 322-23. Thus, the Government's cross-motion for summary judgment on Count II is GRANTED and Mr. Young's motion for partial summary judgment on Count II is DENIED.

<u>Conclusion</u>

For the reasons discussed above, Mr. Young's motion for partial summary judgment is DENIED and the Government's cross-motion for summary judgment is GRANTED. Mr. Young has not presented evidence sufficient to overcome the plain, statutory meaning of "suspension" or to demonstrate that the SEC frustrated his reasonable settlement expectations. The Clerk is directed to enter judgment accordingly. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge